UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NUMBER: 19-CR-80136-ROSENBERG

UNITED STATES OF AMERICA
*Plaintiff*,

vs.

BRIAN SIGOUIN
*Defendant*.

### DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

COMES NOW the Defendant, BRIAN SIGOUIN, by and through undersigned counsel, and replies to the Government's response to the Defendant's motion to suppress physical evidence and statements. The Defendant relies on the argument advanced in his original motion but replies to specific statements made by Government in its response as follows:

1. The Government stated that "for much of the child exploitation material available on 'The Network,' the manifest keys are made publicly available via 'The Network'-based websites and message boards dedicated to child exploitation." (DE 26 at 5) However, SA Alfin conceded in the affidavit that he was not aware of how or from where the "The Network" user obtained a key in order to attempt to retrieve the files of interest. "The Network" message boards and "The Network" sites do not necessarily describe the content of the files for which the manifest keys are provided. Some message boards and sites simply consist of lists of manifest keys, without individual descriptions of the content. Manifest keys may also be shared by direct communication between users, and a user may share a key without describing its contents. Even with a content description, a manifest key may not be accurately labeled or described. An individual may request a file without knowledge

1

      of the illicit nature of the file. In FN 6, the Government provided an example of a manifest key. (DE 26 at 5) From the manifest key itself, there is no way to determine the content of the file.

2. The Government stated that an IP address is "commonly used to identify the location of particular computer user." (DE 26 at 7). However, it is important to understand that an IP address is a numerical label assigned to each computer or device that is connected to a network. A device may connect to a network for any amount of time. Here, when the user attempted to download the files of interests (FOI), the user's device was connected to the network of the target residence. Computers, and of course individuals, are mobile. Any individual who was at the target residence or within range of the target residence could temporarily connect to the target residence's network through his or her own device (laptop, cell phone, tablet, etc.) and request the FOIs through that internet account. Likewise, when the Government stated that "SA Alfin came across a computer with an IP address of 75.74.45.172 that requested three files…," (DE 26 at 8) it is important to understand that what SA Alfin observed was that a device (a computer, a tablet, a cell phone, etc.) was connected to the IP address associated with the target residence. These distinctions are important because they affect the probable cause to believe that the specific device that requested the FOIs would be located at the target residence on the day the search warrant was executed.

3. The Government stated that Judge Reinhart requested to review the peer-reviewed paper discussed in the affidavit and that the paper was provided to him. (DE 26 at 11 FN 11) Government Exhibit #6 is an email from the Government to Judge Reinhart sent at 9:33 PM on May 14, 2018. The subject line of the email is "SW for your Review." The peer-

reviewed paper appears to be provided as an attachment. The body of the email states, "Good evening Judge. Attached is the article. See you tomorrow." (DE 26 Exhibit #6) The search warrant application and attached affidavit state that it was sworn before Judge Reinhart and signed in his presence on May 15, 2018. (DE 26 Exhibit #1) The search warrant itself was signed by the judge on May 15, 2019 at 11:39 am. (DE 26 Exhibit #1) It is unclear when or how the judge requested to view the paper or when the search warrant application and affidavit were first provided to the judge – on May 14, 15, or on a date before. However, the email to Judge Reinhart and the Government's assertion that Judge Reinhardt requested to see the paper is irrelevant. A probable cause determination must be confined to the four corners of the search warrant affidavit.

4. The Government compared "The Network" to other peer-to-peer (P2P) networks and relied on *United States v. Norman*, 448 F. App'x 895 (11th Cir. 2011) to argue that the Defendant did not have a reasonable expectation of privacy in files exchanged over P2P networks (DE 26 at 13) The Government claimed that an individual using "The Network" is like the typical P2P user who places information in a shared fold, and thus has no expectation of privacy from other individuals who are able to access and view the contents of the shared folder. (DE 26 at 14-15) However, the Defendant's case distinguishable from *Norman*, and "The Network" is fundamentally different from other P2P networks in the cases cited by the Government.  A communication using "The Network" is similar to a traditional email; it is a targeted communication between two individuals: the requestor of the file and the holder of manifest key for that file. The peers in "The Network" are not parties to the communication. They are unknowing conduits that route the communication between the two parties. In a typical P2P network, a file is knowingly placed in a shared folder so that

3

it can be made publicly available to every peer that seeks that file. Other P2P investigations focus on content that is openly shared in a user's shared folder. In those investigations, the user is presumably aware of the nature of the content because the user possesses a readable, complete copy of the content, and the user has continued to share the content despite the illicit nature. In contrast, investigations into "The Network" do not focus on content already possessed by the user. Rather, the investigations focus on the user's alleged attempt to access the content.

5. The Government stated that to intercept an electronic communication under the ECPA, an individual must acquire the "content" of a communication. (DE 26 at 49) The Government claimed that requests for pieces of files is "non-content" information because the requests consist "only of computer language or commands; they are not human-readable communications such as 'please send me that file.'" (DE 26 at 21-22) This is illogical. Simply because a sentiment or communication is expressed in symbols, code, numbers, or "computer language" does not mean that the communication is not content. Here, the user communicated a request for the file to the holder of the file/manifest key. The communication was content because the "computer language" was the equivalent of "please send me that file." No matter the language of the communication, the request for the file was clearly content.

6. The Government stated that the Defendant claimed that the affidavit lacked probable cause because SA Alfin "could not connect a specific user to the residence, despite the fact that the IP address resolved back to the defendant's residence." This is a misstatement of the Defendant's argument. One the reasons the affidavit lacked probable cause was not that SA Alfin failed to connect a specific *user* to the IP address. Rather, the affidavit lacked

4

probable cause because there was not a clear nexus between a user of a *device* that was connected to the IP address on three days during one week in March 2018 and the belief that the *device* would be at the target residence on the day the search warrant was executed. It was undisputed that the IP address was connected to the target residence, but it was unclear if the device that requested the FOIs was a permanent fixture at the target residence.

7. The Government stated that the fact that there was a business at the target residence was irrelevant (DE 26 at 28). However, because the target residence included a business as well as a home, there is an increased likelihood that more individuals with their own portable devices used the IP address associated with the target residence. Individuals presumably would frequent the target residence in connection with the business, and individuals would visit the target residence as guests of the residents. Increased foot traffic leads to more individuals at the target residence, each with their own portable device (computer, cell phone, tablet, etc.)

8. The Government stated that the fact that the FBI only investigated the use of "The Network" on the three days that the FOIs were requested and the 53-day time lapse between the last FOI request and the execution the search warrant do not undermine the probable cause for the search warrant. (DE 26 at 29). The Government cited to *State v. Haymond*, 672 F.3d 948 (10th Cir. 2012) to support this contention. However, the facts in *Haymond* are markedly different from the Defendant's case. In *Haymond*, law enforcement used the P2P program LimeWire and conducted a search for the term "8yo," which is an acronym for "8-year-old." *Id*. at 950 LimeWire then returned a list of files with "8yo" in the title of the file and provided the location of LimeWire users sharing those files. *Id*. Law enforcement focused on one of the users. *Id*. Law enforcement was then able to review all

the files that were available to download from that user. *Id.* Law enforcement saw approximately 70 files that were available to download from that user; each file name was a name suggesting child pornography. *Id*. Law enforcement downloaded 62 of the user's files and determined each of those files contained child pornography. *Id*. The user's IP address was traced to a residence. *Id*. Law enforcement obtained a search warrant for that residence approximately 107 days after law enforcement viewed the child pornography file. *Id*. at 951 The court held that the search warrant was not stale. *Id*. at 959 The Defendant's case is fundamentally different from *Haymond*, which highlights the difference between "The Network" and other P2P programs, like LimeWire. In the Defendant's case there was no indication that the user of the IP address knew the files he requested were child pornography and no indication that the user ever received or viewed the files. Therefore, there was no indication that files of child pornography would be found on a device at the target residence, let alone that the device which requested the FOIs would be located at target residence. In *Haymond*, law enforcement knew that the user possessed at least 62 files that contained child pornography. Additionally, due to the number of the files and the fact that they were actually downloaded by the device and user associated with the IP address, there was a clear nexus between the device that contained the files and the residence associated with the IP address. In the Defendant's case, the connection between the three attempts to obtain a file over a one week period and a device containing child pornography at the target residence was tenuous.

9. The Government quoted SA Alfin who stated in the search warrant affidavit that "a user who wishes to locate and download child pornography from "The Network" must identify the key associated with a particular child pornography file and then use that key to

download that file." (DE 26 at 30) The Government concluded that "such effort clearly evinces an intentional rather than accidental search." (DE 26 at 30) This argument obfuscates the fact that from the manifest key itself, there is no way to determine the content of the file. Unlike the file names on LimeWire in *Haymond*, the manifest keys on the "The Network" do not have "names that suggest child pornography." *Haymond*, at 951. Further, SA Alfin conceded that he did not know how the user obtained the manifest key and whether he obtained the key from a message board or site that discussed the content of the file. The user's three attempts to download three files which contained no content clues does not foreclose the possibility that the user did not know the content of the files he was requesting. This is especially true because, as discussed, "The Network" is not simply a platform to upload and download child pornography, but rather a platform for free speech and communication that spans across infinite subject matters.

10. The Government stated that "while it is correct that SA Alfin did not and could not establish that child pornography had been downloaded" to the device using the IP address at the target residence, "this fact does not equate to a lack of probable cause that evidence pertaining to possession of child pornography existed on the computer." (DE 26 at 30-31) To justify this argument the Government, quoting the affidavit, stated "computer files or remnants of such files can be recovered months or even year after they have been downloaded…" (DE 26 at 31) This statement is irrelevant and ignores the fact that "<u>SA Alfin did not and could not establish that child pornography had been downloaded</u>." (DE 26 at 30-31) The Government continued that "the affidavit clearly demonstrates that at least three searches for child pornography files were initiated from a computer utilizing an IP address assigned to [the target residence]." (DE 26 at 31) This is incorrect. The only

7

information known to SA Alfin was that the user *attempted* to download three files that SA Alfin determined were child pornography. It is an unjustified leap to characterize attempts to download the files using manifest keys with no clues as to the content of the files as "searches for child pornography files." The Government cited to *United States v. Gourde*, 440 F.3d 1065, 107 (9th Cir. 2013) in which the court upheld a search warrant even when there was no evidence that the suspect downloaded any contraband images or movies <u>from the child pornography website to which he subscribed for two months</u>. (DE 26 at 31 emphasis supplied) The distinction between the Defendant's case and *Gourde* is clear. A user of Freenet, a platform of infinite subject matters, who attempts to download files where there is no indication the user knew the files contained child pornography is not the equivalent of someone who actively subscribed to a specific "child pornography website" for two months.

11. The Government stated that SA Alfin "will be able to testify, however, if necessary, that in all of 'The Network' investigations he is aware of or has been a part of, there has never been a false positive." (DE 36 at 49). This statement was in response to the Defendant's allegation that SA Alfin failed to include in the affidavit how many times "The Network" searches had failed to produce child pornography. As discussed, probable cause is determined by the four corners of the affidavit for the search warrant, not by the Government's assurance of what a law enforcement agent would testify about.

12. The Government stated that the Defendant "made a request for a file that SA Alfin knew to be child pornography at the time [the Defendant] sent the request." (DE 26 at 38) However, the affidavit does not state that, at the time the user attempted to request the file, the file itself was still available. If the file was no longer available, this would decrease the

8

probable cause to believe that child pornography would be found on a device at the target residence. The Government then stated that SA Alfin could testify that the keys for the requested files were "static keys, such that they would not have changed" and that SA Alfin "used the exact same keys that [the user] used to download the files from 'The Network' on March 29, 2019." (DE 26 at 38) However, as discussed, this is outside the four corners of the affidavit.

13. In its discussion of "no-cache mode," the Government stated that the algorithm assumes that the target being investigated is using no-cache mode and stated, "See Gov't Ex. 2," (DE 26 at 39) None of this discussion was contained in the affidavit; nor were any of the exhibits attached to the affidavit. Probable cause is determined by the four corners of the affidavit.

**WHEREFORE**, for the reasons stated in the Defendant's Motion to Suppress and the Defendant's reply to the Government's response, the Defendant requests this Honorable Court suppress the evidence obtained pursuant to the search warrant and the Defendant's statement obtained pursuant to the search warrant.

**I HEREBY CERTIFY** that on November 18, 2019 I electronically filed the foregoing document with the Clerk of Court using CM/ECF and that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

>  */s/Kevin J. Kulik*
>  **KEVIN J. KULIK**
>  Attorney for the Defendant

Florida Bar Number: 475841
500 SW Third Avenue
Ft. Lauderdale, FL 33315
Telephone: (954) 761-9411
Fax: (954) 767-4750

*/s/Ashley D. Kay*
**ASHLEY D. KAY**
Attorney for the Defendant
Florida Bar Number: 78991
500 SW Third Avenue
Ft. Lauderdale, FL 33315
Telephone: (954) 761-9411
Fax: (954) 767-4750